USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/9/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NETWORK-1 TECHNOLOGIES, INC.,

                            Plaintiff,

        -against-

GOOGLE LLC and YOUTUBE, LLC,

                           Defendants.

-----------------------------------------------------------------X

14-CV-02396 (PGG)(SN)

14-CV-09558 (PGG)(SN)

**ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

    Defendants Google LLC and YouTube LLC ("Google") seek production of documents that third party Amster Rothstein & Ebenstein LLP ("ARE") withheld as protected by the attorney-client or common interest privileges or the work product doctrine. ARE was counsel to Dr. Ingemar Cox, the inventor of the patents in-suit, during the relevant period and is now co-counsel for Plaintiff. The documents at issue are communications ARE had with Network-1 and Mark Lucier, a consultant hired by Cox to assist in the sale of the patents. To resolve the dispute, each party has submitted fifteen documents for *in camera* review. Because one document was submitted by both ARE and Google, the Court reviewed twenty-nine documents in total.

    For the reasons discussed below, Defendants' motion is granted in part and denied in part. ARE has claimed attorney-client privilege over a number of documents that are either not confidential or do not contain legal advice.

## ANALYSIS

**I. Legal Standard**

ARE argues that the withheld documents are protected by the attorney-client privilege, the common interest privilege, the work product privilege, or some combination of the three. "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice, 697 F.3d 184, 207 (2d Cir. 2012) (citing United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). Generally, the known presence of a third party destroys the privilege between attorney and client. Egiazaryan v. Zalmayev, 290 F.R.D. 421, 430 (S.D.N.Y. 2013).

The common interest privilege is an extension of the attorney-client privilege and an exception to the general rule that disclosure of confidential information to a third party destroys the privilege. See HSH Nordbank AG New York Branch v. Swerdlow, 259 F.R.D. 64, 71 (S.D.N.Y. 2009); Allied Irish Banks, P.L.C. v. Bank of Am., N.A., 252 F.R.D. 163, 170 (S.D.N.Y. 2008). A party asserting the common interest privilege must demonstrate that: (1) all clients and attorneys with access to the communication had agreed upon a joint approach to the matter communicated, and (2) the information was imparted with the intent to further that common purpose. S.E.C. v. Wyly, No. 10-CIV-5760 (SAS), 2011 WL 3055396, at *2 (S.D.N.Y. July 19, 2011). The doctrine requires that parties' common interest be "be identical, not similar, and be legal, not solely commercial." Strougo v. BEA Assocs., 199 F.R.D. 515, 520 (S.D.N.Y. 2001) (citation omitted). Arguing that the common interest privilege should apply to communications between it and non-clients Network-1 and Mark Lucier, ARE relies on In re Regents Univ. of California, 101 F.3d 1386, 1390 (Fed. Cir. 1996). The court in Regents found

that the common interest privilege applied to communications between a patentee and attorneys of its exclusive licensee because the parties "had the same interest in obtaining strong and enforceable patents." Id. ARE contends that the common interest doctrine should apply similarly here to shield communications between ARE, who represented the patentee, Mark Lucier, the patentee's consultant, and Network-1, a prospective purchaser of the patent.

Though "the common interest doctrine has routinely been applied in the context of patent litigation," the Court of Appeals "has warned that expansions of the attorney-client privilege under the common interest rule should be 'cautiously extended.'" In re Rivastigmine Patent Litig., No. 05-MD-1661 (HB)(JCF), 2005 WL 2319005, at *3 (S.D.N.Y. Sept. 22, 2005) (citing In re F.T.C., No. 18-CIV-0304 (RJW), 2001 WL 396522, at *4 (S.D.N.Y. Apr. 19, 2001)). This case is distinguishable from Regents. The patentee and exclusive licensee in Regents were found to have identical legal interests because "of the potentially and ultimately exclusive nature of the Lilly-UC license agreement." Regents, 101 F.3d at 1390. Here, the patentee, Dr. Cox, sought to sell rather than license his interest in the patent. While the prospective purchaser, Network-1, doubtless had an interest "in obtaining strong and enforceable patents," see id., the patentee's interest in the patent's continued viability would be diminished following the sale. That Network-1 paid Dr. Cox's legal fees and that he now acts as a consultant to Network-1, Joint Letter 5, ECF No. 191, does not render the parties' legal interests identical at the time of sale negotiations. Instead, as ARE notes, these facts evidence the parties' shared financial interest. Id. Moreover, many of the communications over which ARE asserts the common interest privilege were not made for the purpose of providing legal advice and instead involve business negotiations which "happen to include . . . a concern about litigation." See Bank Brussels

Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 447 (S.D.N.Y. 1995) (common interest privilege does not encompass a joint business strategy).

Finally, ARE claims that all the documents Google seeks are "separately protected by the work product doctrine." Joint Letter 5, ECF No. 191. The work product doctrine protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P 26(b)(3). To determine whether a document was prepared "in anticipation of litigation," courts consider if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." Schaeffler v. United States, 806 F.3d 34, 43 (2d Cir. 2015). Documents "prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" are not protected by the work product privilege. Id.

## II. Application to Disputed Documents

Applying these principles, the Court conducted an *in camera* review of the disputed documents and reaches the following conclusions:

### 1. Ref. I.D. No. 829

This is an email from ARE to Marc Lucier, copying Dr. Cox and providing links to Audible Magic's website as well as other links with information about Audible Magic's business and products. This document is not protected by the attorney-client /common interest privilege, since ARE is not proffering legal advice nor are Lucier or Cox seeking it. This document is also not entitled to work-product protection as there is no indication that it was prepared in anticipation of litigation.

**2. Ref. I.D. No. 841**

This is an email exchange between Marc Lucier, Dr. Cox, and Cox's attorney Charles Macedo regarding the details of a nondisclosure agreement to be signed by Lucier, Cox, and Network-1. The document is not privileged. To the extent Macedo provides legal advice to his client, Lucier's presence on the email destroys the privilege. See Argos Holdings Inc. v. Wilmington Tr. Nat'l Ass'n, No. 18-CIV-5773 (DLC), 2019 WL 1397150, at *3 (S.D.N.Y. Mar. 28, 2019) (presence of consultant destroys privilege where consultant is not necessary to facilitate the legal advice given). The email was not prepared in anticipation of litigation and is thus not protected work product.

**3. Ref. I.D. No. 859**

This is an email from Macedo to Lucier, Cox, and Corey Horowitz, CEO of Network-1, attaching a slide deck containing background information about Dr. Cox, the patent portfolio, and a summary of Google's YouTube patents. Horowitz and Lucier's presence on this communication destroys the attorney-client privilege because, for the reasons described above, the common interest exception does not apply. This document is also not protected work product because it was not prepared in anticipation of litigation.

**4. Ref. I.D. No. 899**

This is an email chain between Horowitz and Macedo preparing for a phone call with Cox. Cox is not on this communication and, as stated above, the common interest privilege does not apply here to a communication between the patentee's lawyer and the prospective buyer. This document is not protected by work product doctrine, either, as it was not prepared by Macedo in anticipation of litigation.

5. **Ref. I.D. No. 919**

This is an email chain between Macedo, Horowitz, and Jon Green of Network-1. The communication includes a list of questions that Horowitz says he would like to review with Cox on a diligence call. This communication is not protected by the attorney-client/common interest privilege because, as described above, Horowitz is not Macedo's client and Horowitz, in any case, is not seeking legal advice. ARE does not claim work product protection of this document.

6. **Ref. I.D. No. 1019**

This is an email chain between Macedo and Horowitz regarding term sheet negotiations. For the reasons discussed at Ref. I.D. No. 899, this email is not protected by the attorney-client/common interest privilege nor does it constitute work product.

7. **Ref. I.D. No. 1061**

This is an email from Horowitz to Macedo, copying Green. Horowitz identifies an individual patent holder whom Horowitz says "may be an interesting person to focus your (our) attention on. This communication is not protected by the attorney-client privilege because Horowitz is not Macedo's client. Nor is it subject to the common interest exception for the reasons discussed above. Though Horowitz may be writing in anticipation of some potential litigation, the work product doctrine also does not apply because there is no response from Macedo and therefore no attorney "mental impressions, opinions, or legal theories" to be protected. See Strougo, 199 F.R.D. at 520 (citing Horn & Hardart Co. v. Pillsbury Co., 888 F.2d 8, 12 (2d Cir. 1989)). In any case, the work product protection will not apply where "the mere possibility of litigation exists." Status Time Corp. v. Sharp Elecs. Corp., 95 F.R.D. 27, 29 (S.D.N.Y. 1982) (citation omitted).

**8. Ref. I.D. No. 1070**

This is an email from Horowitz to Macedo, attaching comments to the sale term sheet. This document is not protected by the attorney-client privilege as Horowitz is not Macedo's client and the common interest exception would not apply here, especially because the parties do not have identical interests in negotiation of the term sheet. This communication was not prepared in anticipation of litigation and is also not work product.

**9. Ref. I.D. No. 1075**

This is a continuation of the thread in Ref. I.D. No. 1070. For the same reasons, it is not privileged.

**10. Ref. I.D. No. 1077**

This is another communication between Macedo and Horowitz regarding negotiation of the sale term sheet. For the same reasons as Ref. I.D. No. 1070, it is not privileged.

**11. Ref. I.D. No. 1094**

This is an email chain between Macedo and Lucier regarding the sale term sheet. For the same reasons as Ref. I.D. No. 1070, it is not subject to attorney-client /common interest privilege and does not constitute work product.

**12. Ref. I.D. No. 1218**

This is a communication between Macedo and Horowitz attaching a Federal Circuit case that Macedo identified as relevant in potential litigation against Defendants. This communication is protected by the work product privilege since it was prepared by Macedo in anticipation of litigation and "tends to reveal mental impressions, conclusions, opinions or theories concerning the litigation." See United States v. Adlman, 134 F.3d 1194, 1195 (2d Cir. 1998) (documents do

not lose work-product protection just because they are "intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation.").

**13. Ref. I.D. No. 1356**

This is an email from Macedo to Horowitz, copying Cox and Green. Macedo lists proposed patent claims to assert against Defendants. This document is protected by the work product privilege as it was created by Macedo in anticipation of litigation against Defendants in this action.

**14. Ref. I.D. No. 1514**

This is an email from Macedo to Horowitz and Green identifying revenue streams of Defendants and other companies that provide streaming video services. This communication is not protected by the attorney-client privilege/common interest privilege for the reasons discussed above. In any case, the attorney-client privilege is narrowly construed, and this communication may not have been for the purpose of providing legal advice. See Misek-Falkoff v. Int'l Bus. Machines Corp., 144 F.R.D. 48, 49 (S.D.N.Y. 1992) ("Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, the privilege is narrowly construed, applying only where necessary to achieve its purpose."). It is also not protected work product because the information contained in the email is the type that would have been prepared in the ordinary course of business.

**15. Ref. I.D. No. 1527**

This is an email chain between Horowitz and Macedo, copying Cox, regarding a new patent that cites Cox's patent. The first email in the chain is protected by the work product privilege as it contains Macedo's mental impressions and appears to have been written with an eye toward anticipated litigation. The later email in the chain, from Horowitz to Macedo is not work product

nor is it protected by the attorney-client/common interest privileges for the reasons described *supra*.

**16. Ref. I.D. No. 1533**

This is an email from Macedo to Horowitz, Cox, and Green, expressing Macedo's view that a particular company should be looked at closely, likely because it may be infringing upon Cox's patent. This communication was prepared by Macedo in anticipation of potential litigation against that company and is therefore protected by the work product doctrine.

**17. Ref. I.D. No. 1535**

This is an email from Macedo to Horowitz, Cox, and Green. The email's subject matter indicates that it was prepared in anticipation of litigation. This document is protected work product.

**18. Ref. I.D. No. 1555**

This is an email from Macedo to Horowitz and Cox attaching and describing a complaint in another patent litigation. Macedo appears to be sharing the complaint with the recipients because of the description of the defendant's product. Because it appears this email was prepared in anticipation of future litigation, it is protected work product.

**19. Ref. I.D. No. 1567**

This is an email from Macedo to Horowitz, copying Cox and Macedo's legal assistant attaching Macedo's billing statement. Billing statements are generally not privileged. Egiazaryan, 290 F.R.D. at 430. To the extent a billing statements reveals legal advice, it might be protected by attorney-client privilege. See Riddell Sports Inc. v. Brooks, 158 F.R.D. 555, 560 (S.D.N.Y. 1994). But here, because the common interest exception does not apply and the bills were forwarded, unredacted to non-client Network-1, the attorney-client privilege was waived.

**20. Ref. I.D. No. 1646**

This is an email chain between Horowitz and Macedo regarding the purchase agreement term sheet. For the reasons described above, communications between Macedo and Horowitz are not protected by the attorney-client/common interest privilege. This document is also not protected work product as it was prepared in connection with the sale of Cox's patent, not in anticipation of litigation.

**21. Ref. I.D. No. 1680**

This is an email from Macedo to Horowitz, copying Cox and Macedo's legal assistant attaching Macedo's billing statement. For the same reasons discussed at Ref. I.D. 1567, this document is not privileged.

**22. Ref. I.D. No. 1719**

This is an email chain between Horowitz and Macedo, copying Cox and Sam Schwartz, who appears to be Horowitz's attorney. The email concerns the details of the patent purchase agreement. For the reasons described in Ref. I.D. No. 1094, it is not privileged. ARE does not claim that this document is protected work product.

**23. Ref. I.D. No. 1813**

This is an email from Macedo to Horowitz and Green, copying Cox. The email attaches a proposed set of claims for a new patent application. For the reasons described above, the document is not protected by the attorney-client/common interest privilege. This document is not protected by the work product doctrine because it relates to a patent application and was not prepared for litigation. "Documents that are generated in connection with a patent application are not protected by the work-product doctrine simply because an issued patent may give rise to an

infringement action." <u>Softview Computer Prod. Corp. v. Haworth, Inc.</u>, No. 97-CIV-8815 (KMW)(HBP), 2000 WL 351411, at *5 (S.D.N.Y. Mar. 31, 2000).

   **24. Ref. No. 1878**

This is an email from Macedo to Horowitz and Green, copying Cox. Macedo attaches the provisional as-filed version of Cox's patent application. For the same reasons as Ref. I.D. No. 1813, this document is neither privileged nor protected work product.

   **25. Ref. I.D. No. 1912**

This is an email from Macedo to Horowitz and Green, copying Cox. In the email, Macedo identifies a potential patent claim against another company. This is protected work product because it was prepared in anticipation of patent litigation. <u>See</u> <u>Softview Computer Prod. Corp.</u>, 2000 WL 351411, at *5 ("Documents pertaining to the patent application process which were also prepared because of actual or anticipated litigation may be protected by the work-product doctrine.").

   **26. Ref. I.D. No. 1914**

This is a continuation of the email chain at Ref. I.D. No. 1912. For the same reasons, it is protected work product.

   **27. Ref. I.D. No. 1968**

This is an email from Macedo to Horowitz and Green, copying Cox and providing a list of proposed claims for Cox's patent. For the same reasons described at Ref. I.D. No. 1813, this document is neither privileged nor protected work product.

28. **Ref. I.D. No. 1977**

This is an email chain between Horowitz and Macedo, copying Cox and identifying potential claims against another company. For the reasons described at Ref. I.D. No. 1912, this document is protected work product.

29. **Ref. I.D. No. 2008**

This is an email chain between Horowitz and Macedo regarding terms of the sale from Cox to Network-1. For the same reasons described at Ref. I.D. No. 1094, it is not privileged. ARE does not claim work product protection over this document.

## CONCLUSION

After *in camera* review of the documents selected by the parties, Defendants' request is GRANTED in part and DENIED in part. In summary, the common interest privilege does not apply to communications between ARE and Network-1 or between ARE and Mark Lucier. Accordingly, the attorney-client privilege is waived as to documents that ARE shared with Lucier and Network-1, including billing statements. Materials prepared for purposes of a patent application, rather than in anticipation of litigation, are not protected by the work product doctrine. Similarly, communications created to provide business or negotiation advice are not protected work product.

Within fourteen days from this order, ARE shall produce communications specified in this order as non-privileged and not protected by the work product doctrine and shall review its privilege log to produce any additional documents in accordance with this order.

The Clerk of Court is respectfully requested to terminate the motion at ECF No. 191 in 14-cv-02396.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   December 9, 2019
         New York, New York