UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NETWORK-1 TECHNOLOGIES, INC.,

Plaintiff,

v.

GOOGLE LLC and YOUTUBE, LLC,

Defendants.

No. 14 Civ. 2396 (PGG) (SN)
[redacted]

**PLAINTIFF NETWORK-1 TECHNOLOGIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. SAMRAT BHATTACHARJEE**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 2

III. ARGUMENT ..... 3

A. Dr. Bhattacharjee Should Be Precluded from Testifying that the Agreed Construction Excludes Changes Made by Google Engineers ..... 3

B. Dr. Bhattacharjee's Offshoring Opinions Should Be Excluded Because They Do Not Address Siberia as It Existed in 2015 and Merely Parrot What Google's Engineers Told Him ..... 6

1. One Opinion Addresses the LSH Version in 2011–2014, the Other Siberia in 2020 ..... 7

2. The Opinions Rest on Unverified Statements of Google's Engineers ..... 9

C. The Divided-Infringement Opinions Should Be Excluded Because Element (a) Requires No Act by the Uploader and Dr. Bhattacharjee Offers Only a Legal Conclusion ..... 11

IV. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Software Design Corp. v. Fiserv, Inc.*,
641 F.3d 1368 (Fed. Cir. 2011)........ 12

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)........ 13

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)........ 3

*Barry v. DePuy Synthes Cos.*,
164 F.4th 896 (Fed. Cir. 2026) ........ 3

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)........ 4

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)........ 3

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999)........ 6, 9

*Hygh v. Jacobs*,
961 F.2d 359 (2d Cir. 1992)........ 13

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994)........ 3

*Kenexa Brassring, Inc. v. Taleo Corp.*,
751 F. Supp. 2d 735 (D. Del. 2010)........ 13

*Mars, Inc. v. Coin Acceptors, Inc.*,
527 F.3d 1359 (Fed. Cir. 2008)........ 6

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013)........ 9

*Micro Chem., Inc. v. Lextron, Inc.*,
317 F.3d 1387 (Fed. Cir. 2003)........ 3

*Network-1 Techs., Inc. v. Google LLC*,
Nos. 2024-1893, -1948, slip op. (Fed. Cir. Apr. 23, 2026) (No. 14-cv-9558, Dkt. 250)........ 4, 5

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005)........ 3, 13

*Riles v. Shell Expl. & Prod. Co.*,
298 F.3d 1302 (Fed. Cir. 2002)........ 7, 9

*SiRF Technology, Inc. v. International Trade Commission*,
601 F.3d 1319 (Fed. Cir. 2010)........ 11

*Treehouse Avatar LLC v. Valve Corp.*,
54 F.4th 709 (Fed. Cir. 2022) ........................................ 4

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991) ........................................ 3

*United States v. Dukagjini*,
326 F.3d 45 (2d Cir. 2003) ........................................ 9

*United States v. Duncan*,
42 F.3d 97 (2d Cir. 1994) ........................................ 13

*United States v. Mejia*,
545 F.3d 179 (2d Cir. 2008) ........................................ 9

**Other Authorities**

Restatement (Second) of Torts
§ 491 cmt. c (Am. L. Inst. 1965) ........................................ 13

**Rules**

Fed. R. Civ. P. 26(a)(2)(B)(i) ........................................ 9

Fed. R. Civ. P. 37(c)(1) ........................................ 9

Fed. R. Evid. 702(a)–(d) ........................................ 2, 3, 9

Fed. R. Evid. 703 ........................................ 9

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | October 30, 2019 Deposition of Matthias Konrad |
| 2 | Dr. Mitzenmacher December 20, 2019 Opening Infringement Report |
| 3 | Dr. Kinrich December 20, 2019 Opening Damages Report |
| 4 | Dr. Leonard February 14, 2020 Rebuttal Damages Report |
| 5 | Dr. Leonard October 9, 2026 Second Supplemental Rebuttal Damages Report |
| 6 | Dr. Leonard September 16, 2022 Supplemental Rebuttal Damages Report |
| 7 | August 5, 2021 Deposition of Christine Moor |
| 8 | November 18, 2021 Deposition of Matthias Konrad |
| 9 | May 28, 2015 Deposition of David Erb (Vol. I) |
| 10 | Defendants' Objections and Responses to Second Amended 30(b)(6) Notice dated July 16, 2021 |
| 11 | September 2, 2021 Deposition of Oleg Ryjkov |
| 12 | July 22, 2021 Deposition of Alana Malina |
| 13 | July 24, 2020 Deposition of Gregory Leonard |
| 14 | Defendants' Fourth Supplemental Initial Disclosures (June 8, 2021) |
| 15 | Dr. Kinrich August 24, 2026 Second Supplemental Damages Report |
| 16 | Dr. Bhattacharjee September 16, 2022 Supplemental Report |
| 17 | October 22, 2026 email from Andrew Hoffman |
| 18 | July 10, 2020 Deposition of Dr. Trevor Darrell |
| 19 | Plaintiff's Amended Notice of Rule 30(b)(6) Deposition (August 15, 2019) |
| 20 | October 4, 2019 Deposition of Hanna Pasula |
| 21 | Dr. Trevor Darrell December 20, 2019 Expert Report (Dkt. 234-3) |
| 22 | February 14, 2020 Deposition of Dr. Samrat Bhattacharjee |
| 23 | Dr. Michael Mitzenmacher August 26, 2022 Supplemental Expert Report |
| 24 | July 8, 2020 Deposition of Dr. Samrat Bhattacharjee |
| 25 | Defendants' Objections to First Set of Interrogatories (May 14, 2015) |

## I. INTRODUCTION

Network-1 moves to exclude or limit the opinions of Google's technical expert Dr. Bhattacharjee on three issues. First, in opining that the accused Siberia version of Content ID does not infringe, Dr. Bhattacharjee reads into the agreed construction of "sublinear" a requirement it does not contain: that only automatic adjustments by Siberia's software, and not adjustments by Google's engineers, can make the search sublinear. Google engineers use what the Federal Circuit refers to as "tunable knobs" to set and change how much of the index Siberia searches. Because Siberia's software does not make those changes, Dr. Bhattacharjee calls them "immaterial" and says it is "contrary to the claim language itself" to find that a "human-directed change" can produce sublinear scaling. The agreed construction, however, turns on how a search's execution time scales with the size of the data set, and says nothing about whether a person or software decides how much of the index is searched. The Federal Circuit reads it the same way: a jury can find the search sublinear because of those human-adjustable knobs. Whether the knobs in fact make Siberia's search sublinear is a question for the jury, and Dr. Bhattacharjee is free to address it. But Dr. Bhattacharjee should not be permitted to tell the jury that the claim language excludes changes made by people rather than software, particularly where his claim interpretation is contrary to that of the Federal Circuit.

Second, Google relies on Dr. Bhattacharjee to support its assertion that offshoring the Siberia system is a non-infringing alternative that would limit damages. But neither of his opinions addresses the relevant system: Siberia as it existed at the hypothetical negotiation in late 2015. One addresses a different system, the older LSH version, in 2011 through 2014. The other addresses Siberia as it existed in 2020, five years too late. Google itself told the Court that the hypothetical negotiation would have taken place in November 2015 and that treating the LSH and

Siberia versions as one system is "fundamentally flawed." Both opinions should also be excluded because Dr. Bhattacharjee serves as a mere conduit for the conclusions of Google's own engineers. Indeed, his 2020 opinion rests on what two engineers told him in an interview after fact discovery closed, and as he admitted at deposition, "I couldn't verify that. I did take their word for it."

Third, Google's divided-infringement defense rests entirely on Dr. Bhattacharjee's premise that uploading a video from a user's device is a step of the claimed method that users perform rather than Google. The claim contains no such step. It recites three steps, all performed by the computer system, not the user's device: obtaining features extracted from a media work, identifying the work, and determining an action. The phrase "uploaded from a client device" in the obtaining step is a past participle modifying "the media work." It describes a work that has already been uploaded by the time the claimed method begins and identifies where the work came from. The method thus begins after the upload, and every step of it is performed by the computer system. Whether Google directs or controls its users therefore has no bearing on infringement, and Dr. Bhattacharjee's opinion that Google does not infringe because Network-1 has not shown such direction or control should be excluded.

The Court should grant the motion and exclude the improper opinions discussed herein.

## II. LEGAL STANDARD

The proponent of expert testimony must show "that it is more likely than not" that the testimony "will help the trier of fact," "is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). The 2023 amendment makes clear that the sufficiency of an expert's basis and the application of the expert's methodology are admissibility questions for the court. Treating them as "questions of weight and not admissibility" is "an

incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

"[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (emphasis omitted) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)). A court need not admit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). And testimony that "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts" does not help the jury. *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)). Second Circuit law governs admissibility, and Federal Circuit law governs the patent questions the opinions address. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390–91 (Fed. Cir. 2003).

## III. ARGUMENT

### A. Dr. Bhattacharjee Should Be Precluded from Testifying that the Agreed Construction Excludes Changes Made by Google Engineers

Dr. Bhattacharjee does not simply apply the agreed construction of "sublinear" differently than Dr. Mitzenmacher does. He adds a requirement the construction does not contain: that only changes dictated by Siberia's code, and not changes made by Google's engineers, can make the search sublinear. And he would tell the jury that the claim language itself excludes the engineers' changes. That opinion does not apply the agreed construction to Siberia; it impermissibly rewrites the construction adopted by the Court.

Expert opinion "that contradicts the court's claim construction is not helpful to the jury and, hence, should be excluded as unreliable under Rule 702(a)." *Barry v. DePuy Synthes Cos.*, 164 F.4th 896, 903 (Fed. Cir. 2026). Where the court "finds a genuine contradiction between the

expert's opinion and the court's claim construction, the court must exclude the expert's opinion." *Id.* at 909. The rule applies with particular force to an agreed construction: "When the court has adopted a construction that the parties requested and agreed upon, any expert theory that does not rely upon that agreed-upon construction is suspect." *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022) (affirming order striking testimony "based on a claim construction that is materially different from the construction adopted by the parties and the court"). "No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

The Siberia version of Content ID starts with each video uploaded to YouTube, uses neural networks to generate a digital "fingerprint" of it, and looks up that fingerprint in an index of reference content, so that content owners can decide what happens when their content is reused. Ex. 22 ¶¶ 54, 89, 91, 97–98.[1] Its index lookup first scans [redacted], then scans all of the entries in [redacted] Ex. 22 ¶ 98; Ex. 16 ¶ 23. That number is a setting, one of the "tunable knobs" the Federal Circuit relied on in reversing summary judgment of noninfringement as to Siberia. *Network-1 Techs., Inc. v. Google LLC*, Nos. 2024-1893, -1948, slip op. at 16 (Fed. Cir. Apr. 23, 2026) (No. 14-cv-9558, Dkt. 250) ("Fed. Cir. Op."). Google's engineers have "several preset combinations . . . of query parameters," and the setting that [redacted] Ex. 20 at 83:17–84:24 (as quoted in Ex. 16 ¶ 30 n.37). In 2020, Google reduced [redacted]. Ex. 16 ¶¶ 22–23 & n.20; Ex. 23 ¶ 21. As Dr. Mitzenmacher explains, "[r]educing the [redacted] . . . as the size of the data set increases results in sublinear scaling." Ex. 23 ¶ 22.

[1] Each exhibit cited herein is attached to the Declaration of Brian Ledahl in Support of Network-1's *Daubert* and Motion *in Limine* Motions.

Dr. Bhattacharjee concedes that Google's engineers "can, and in this instance did," change [redacted]. Ex. 16 ¶¶ 23–24. But he says those changes do not count because people, not Siberia's code, make them. *Id.* ¶ 32. Counting a "human-directed change to [redacted]" would, in his view, be "contrary to the claim language itself." *Id.* ¶ 26.

The agreed construction forecloses that opinion. Claim 33 requires "a sublinear approximate nearest neighbor search of reference extracted features of reference identified media works." '237 patent, 28:12–14. The parties agreed that a "sublinear" search is "[a] search whose execution time scales with a less than linear relationship to the size of the data set to be searched, assuming computing power is held constant." Ex. 16 ¶ 12; Fed. Cir. Op. at 13. The construction holds one variable constant, "computing power," and asks how a search's "execution time scales" with "the size of the data set to be searched." Scaling is a relationship across data-set sizes: how execution time changes as the data set grows. The construction does not say *how* a search must be adjusted for a growing data set, or *who* may make the adjustment. If Siberia scans a smaller share of a growing index, its execution time grows more slowly than the index, whether a line of code or an engineer sets the share. *See* Ex. 23 ¶¶ 22–24. Dr. Bhattacharjee's test adds a requirement of automatic, code-driven adaptation that appears nowhere in the construction the parties agreed to.

The Federal Circuit treated those adjustments as part of the sublinearity inquiry. In reversing summary judgment of noninfringement, it concluded that a factfinder could find Siberia was designed to scale sublinearly "because the 'tunable knobs' allowed the system to adapt to a growing dataset size." Fed. Cir. Op. at 16. The court added that "it is immaterial that the Siberia version, once that 'knob' is turned, may search that new 'fixed fraction' linearly." *Id.* Dr. Bhattacharjee would have the jury disregard the very knobs the Federal Circuit relied on,

calling them "immaterial" because Google's engineers, not Siberia's software, turn them. Ex. 16 ¶ 32. But the agreed construction does not require that a change in the portion of the data set searched be made by software rather than Google's personnel. Dr. Bhattacharjee may testify that changes Google's engineers made did not cause Siberia's execution time to scale sublinearly. But he should be precluded from telling the jury that any such change falls outside the construction because a person rather than software made it.

Dr. Bhattacharjee's rewritten construction of the sublinear element is directly contrary to the Court's construction, as recognized by the Federal Circuit. He should thus be precluded from offering, in any form, the opinion that the agreed construction excludes changes made by Google's engineers, including in the following passages of his reports: Ex. 16 ¶ 24 (first sentence), ¶ 26 & n.28, and ¶ 32 (from "The notion that humans").

### B. Dr. Bhattacharjee's Offshoring Opinions Should Be Excluded Because They Do Not Address Siberia as It Existed in 2015 and Merely Parrot What Google's Engineers Told Him

Google's offshoring alternative would move the "Match System component of the Content ID system" to servers outside the United States. Ex. 22 ¶¶ 455, 457, 462. A non-infringing alternative limits damages only to the extent Google could have adopted it, as an acceptable and available substitute, at the time of the hypothetical negotiation, and Google bears the burden of proving it. *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008). Because Google did not move the Siberia Match System offshore until 2021, the Court "must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement," and "[s]witching to a noninfringing substitute after the accounting period does not alone show availability of the noninfringing substitute during this critical time." *Grain Processing*, 185 F.3d at 1353. The inquiry "must relate to the time infringement occurred,

and not be an after-the-fact assessment." *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002). Dr. Bhattacharjee's opinions fail on two independent grounds, either of which warrants exclusion: neither addresses the Siberia Match System as it existed in late 2015, and both simply adopt what Google's engineers told him.[2]

**1. One Opinion Addresses the LSH Version in 2011–2014, the Other Siberia in 2020**

The hypothetical negotiation would have occurred when Siberia launched, in the second half of 2015. Ex. 15 ¶ 4; Ex. 5 ¶ 7 (November 2015). Google itself told the Court that the negotiation "would have taken place in November 2015," that Network-1's damages expert "addresses hypothetical negotiation dates in August 2011, June 2012, and December 2014, none of which are relevant," and that an analysis treating Content ID as one system "without distinguishing between the LSH and Siberia versions" is "fundamentally flawed." Dkt. 337 at 2. The two versions then ran side by side "from November 2015 through the end of 2018." *Id.* at 4. The purported alternative that matters is offshoring the Siberia Match System as it existed in late 2015.

Dr. Bhattacharjee offers no opinion about that alternative. His 2022 opinion is that "Google could have migrated the LSH Version of the Content ID system to servers outside the United States in at least 2011, 2012, and/or 2014." Ex. 16 ¶ 36. His only 2015 source on the Match System, the May 2015 testimony of Google's Rule 30(b)(6) witness David Erb, "focused exclusively on the feasibility of relocating instances of the LSH Version" because Siberia "had not even deployed in

---

[2] Network-1 moves against Dr. Leonard on the same grounds. *See* Network-1's Memorandum in Support of Its *Daubert* Motion to Exclude Opinions of Dr. Gregory K. Leonard (filed concurrently). Dr. Leonard's only technical-expert support for his opinion that offshoring was feasible in November 2015 is Dr. Bhattacharjee's 2020 opinion and, "generally," both of his offshoring sections. Ex. 5 ¶¶ 11, 13 & n.12; Ex. 4 ¶¶ 67, 78, 83, 90 & nn. 149, 169, 176, 202; Ex. 6 ¶¶ 9, 13.

production." *Id.* ¶ 41. His most recent capacity figures are from January 2014. *Id.* ¶ 47. He acknowledges that "the Match System had grown in size and complexity over time," which is why he treats 2012 figures as "a conservative proxy" for 2011. *Id.* ¶ 47 n.75. By his own reasoning, figures from January 2014 understate what offshoring the Match System in late 2015 would have required. His 2020 opinion addresses the Siberia version as it existed in 2020. Ex. 22 ¶ 457.

The 2015 system was more demanding than the earlier LSH version and less portable than the 2020 Siberia system. Google's Rule 30(b)(6) witness on the hardware capabilities of the match servers "at the time of the transition to the Siberia version" testified that the "old version . . . consumed fewer resources," so it "would have required less excess capacity" than "the version that we have today." Ex. 7 at 24:18–25, 123:17–25 & Ex. 1 (Topic 12). Content ID, including the Siberia version, [redacted] in 2015. Ex. 11 at 121:4–11, 122:11–14. Around 2017, Google [redacted] as part of a YouTube-wide migration, *id.* 122:18–23, whose "main reason," according to Mr. Konrad, was that "[redacted], which led to less operational costs of moving data centers." Ex. 8 at 36:12–24 (Nov. 18, 2021). An analysis of offshoring the older, lighter system, or the later, more portable one, says nothing about offshoring the Siberia Match System Google actually ran in 2015. To the extent Google relies on Network-1's damages expert, who found the shift from December 2014 to the second half of 2015 "not a significant factor in arriving at a reasonable royalty," Ex. 15 ¶ 4, that observation concerns royalty economics. It does not address whether offshoring the Siberia Match System was available to Google, or acceptable to it, in late 2015.

Dr. Bhattacharjee's opinion that he has "seen no evidence" that operating "the LSH Version of the Match System in Europe," or moving its instances, "posed any material technological, economic, or commercial difficulties for Google," Ex. 16 ¶ 37, also addresses only

the LSH Version. And it asks the jury to infer that offshoring was available from an absence of evidence, when Google bears the burden of proving that it was. *See Grain Processing*, 185 F.3d at 1353 ("[m]ere speculation or conclusory assertions will not suffice").

Dr. Bhattacharjee cannot close the gap at trial. His reports had to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i); *see* Fed. R. Civ. P. 37(c)(1). The Court has barred further supplementation. Dkt. 359 ¶ 4. Nor may Google invite the jury to infer 2015 availability by bracketing the LSH opinions with the 2020 one. Inferring what Google could do in 2015 from what it could do in 2020 is the after-the-fact assessment *Riles* forbids, 298 F.3d at 1313, and whether Google could have moved the LSH version in 2011 through 2014 does not show that it could have moved Siberia in late 2015. Opinions about a different system, or the same system five years later, will not "help the trier of fact" and should be excluded. *See* Fed. R. Evid. 702(a).

**2. The Opinions Rest on Unverified Statements of Google's Engineers**

The engineers' hearsay account of what Google could have done is the substance of Dr. Bhattacharjee's offshoring opinions, not information he verified, and it should not reach the jury through him. An expert may rely on information from a party's employees, see Fed. R. Evid. 703, but he "may not . . . simply transmit that hearsay to the jury." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). He "must form his own opinions by 'applying his extensive experience and a reliable methodology'" to that information. *Id.* (quoting *United States v. Dukagjini*, 326 F.3d 45, 58 (2d Cir. 2003)). Otherwise he is "simply 'repeating hearsay evidence without applying any expertise whatsoever.'" *Id.* (quoting *Dukagjini*, 326 F.3d at 58–59); *see also Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ("[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.") (internal quotation marks omitted).

Dr. Bhattacharjee's 2022 opinion relies on three Google engineers who "have testified that it would have been feasible, from a technological and resource perspective, to move the LSH Match System in 2011," and then concludes: "Based on my own review of the testimony and related materials, I agree." Ex. 16 ¶ 35. He calls one of them, Christine Moor, "an expert on YouTube's data center capacity in 2011." *Id.* ¶ 46. Google never disclosed Ms. Moor as an expert. The opinion he adopts from her, that "it would have been just as feasible as it was today to move the Match system back in 2011," *id.* ¶ 39, is a technical judgment about what Google could have done in 2011, and she offered it "[n]ot based on any data that I have in front of me right now, but based on data that I have seen in the past." Ex. 7 at 121:9–20, 122:22–123:6. She identified no document and no figures. Dr. Bhattacharjee simply adopts her conclusion, Ex. 16 ¶ 35, and an opinion adopted from a witness who could point to no specific data is not "based on sufficient facts or data." Fed. R. Evid. 702(b). That is the kind of opinion Rule 701 reserves for disclosed experts, *see* Fed. R. Evid. 701(c), and it does not become reliable by passing through an expert who rubber-stamps it.[3]

His 2020 opinion, that "there are no technical barriers to relocating the instances of the Match System that are currently located in the United States to another country," rests on the February 2020 interview of Mr. Konrad and Mr. Ryjkov, conducted after fact discovery closed on November 1, 2019. Ex. 16 ¶¶ 454–57 & nn.424–30; Dkt. 256 at 1. The interview supplied both his bandwidth figure and its purported insignificance: "I understand from speaking with Mr. Konrad and Mr. Ryjkov that 2.4 Gbps is an immaterial amount of bandwidth in light of the amounts

[3] Further, as discussed in detail in Network-1's concurrently filed MIL 1 at 1–6, and the Leonard Daubert motion at § IV.B, the evidence Dr. Bhattacharjee relied on in his 2022 Supplemental Report was untimely produced, and the evidence and opinions based thereon should be excluded. For example, the primary document he relies on for his relocation opinions includes data for the earlier period that Google could and should have produced during discovery. *See* Ex. 16 ¶ 47.

available to and used by Google." Ex. 22 ¶¶ 469–70 & nn.444, 447; *see also* Ex. 16 ¶ 50. He took no notes of the interview, so the only record of what the engineers told him is his own recollection of it. Ex. 24 at 206:14–207:7. Nor did he do any analysis to verify what they told him: "I couldn't verify that. I did take their word for it." *Id.* 207:22–208:5. His analysis of load balancing likewise consists entirely of what the engineers told him: "since they said it wasn't anything, I mean, that was the analysis that I had to do." *Id.* 215:17–216:2.

Either ground warrants: precluding Dr. Bhattacharjee from offering, in any form, the opinion that Google could have relocated the Match System outside the United States, including his 2020 offshoring opinions (Ex. 22 § XVI, ¶¶ 453–79 & nn.423–61) and his 2022 offshoring opinions (Ex. 16 § VIII, ¶¶ 33–52 & nn.44–97, and ¶ 53 (second sentence)); and excluding DX Q, R, T, U, V, W, AE, and AF–AL on Defendants' First Supplemental Trial Exhibit List (Oct. 8, 2026) to the extent offered through him.

### C. The Divided-Infringement Opinions Should Be Excluded Because Element (a) Requires No Act by the Uploader and Dr. Bhattacharjee Offers Only a Legal Conclusion

Claim 33's first step is "obtaining, by a computer system including at least one computer, media work extracted features that were extracted from a media work, the media work uploaded from a client device." '237 patent, 28:6–9. That step recites one act, "obtaining," performed by one actor, the computer system. "[T]he media work uploaded from a client device" refers to an already completed upload when the computer system performs the first step of obtaining the work's extracted features, and identifies where the uploaded media work originated.

In *SiRF Technology, Inc. v. International Trade Commission*, the Federal Circuit held that the rules for attributing third parties' conduct did not apply where the third parties' only role was to get data to the device that performed the claimed method. 601 F.3d 1319, 1329–31 (Fed. Cir. 2010). The appellants argued that SiRF could infringe only if it directed or controlled its customers

and the end users of its GPS devices. *Id*. at 1329. The court did "not reach the question of joint infringement because [it did] not read the relevant claims as requiring that any of the specified actions be taken by SiRF's customers or by the end users of the GPS devices." *Id*. One step required "processing [the] satellite signals received at the mobile GPS receiver," and the appellants argued that "end users must actually initiate the process of downloading" SiRF's data before that processing could occur. *Id*. at 1330–31. The court found no "step which requires 'downloading' the data into the GPS receiver" and declined to "read such limitations into the claims." *Id*. at 1331. It reached the same result for the "communicating" and "transmitting" steps: the customers' forwarding and the end users' downloading "are not required by the claims, and, therefore, the fact that other parties perform these actions does not preclude a finding of direct infringement." *Id*. at 1330. Claim 33 likewise contains no uploading step. The upload precedes the claimed method, as the download did in SiRF, and the method itself is performed entirely by the computer system.

The Federal Circuit applied the same rule, that an act performed before the claimed method begins is not a step of the method, in *Advanced Software Design Corp. v. Fiserv, Inc.*, to a claim that described its subject by how it had been made. 641 F.3d 1368, 1372–75 (Fed. Cir. 2011). The claims recited a process for validating a check on which selected information had been encrypted and printed, and the district court held that the accused infringer could not infringe unless it directed or controlled the encrypting and printing. *Id.* at 1372–73. The Federal Circuit reversed. The claims "recite a process or system for validating checks, not for encrypting and printing them," and the encrypting and printing language served to "describe a financial instrument in terms of the steps required to create it." *Id.* at 1375. Element (a) does the same thing: it describes the media work by how it reached the computer system. District courts have reached the same result where, as here, users supplied the data. In *Kenexa Brassring, Inc. v. Taleo Corp.*, the claimed

method parsed résumés that users had submitted, and the court rejected a divided-infringement defense because "[t]he performance of the method occurs after the user has supplied the data." 751 F. Supp. 2d 735, 751 (D. Del. 2010). The rules for attributing one actor's conduct to another therefore do not reach element (a); they govern only "[w]here more than one actor is involved in practicing the steps." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc).

Nor is there any dispute that the videos Siberia analyzes were uploaded from client devices. Google admits that users upload videos to YouTube from "cell phone devices" and "computers" and that those uploads are "analyzed using the Content ID system." Ex. 25 (Responses to RFA Nos. 61–64). Dr. Bhattacharjee's assertion that Dr. Mitzenmacher offers no evidence that "Defendants practice this step" rests on the same flawed premise that uploading the media work is a step of the claimed method. Ex. 22 ¶ 312.

Dr. Bhattacharjee's divided-infringement opinion is also an impermissible legal conclusion. He recites the Federal Circuit's framework for attributing one actor's conduct to another (direction or control, joint enterprise, agency, contract, and conditioning) and pronounces it unmet. Ex. 22 ¶ 313; *see Akamai*, 797 F.3d at 1022–23. Because element (a) assigns the uploader no step, that framework does not apply. And where attribution is at issue, the jury decides it "under proper direction from the court," *id.* at 1023 (quoting Restatement (Second) of Torts § 491 cmt. c (Am. L. Inst. 1965)), not an engineer who "undertakes to tell the jury what result to reach." *Nimely*, 414 F.3d at 397 (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)). Such testimony "would remain objectionable by communicating a legal standard—explicit or implicit—to the jury." *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992).

Dr. Bhattacharjee should be precluded from offering, in any form, the opinion that uploading a video is a step of the claimed method that Google must perform or that Google does not direct or control its users' uploads, including Ex. 22 § XI, ¶¶ 312–13 & n.266.

## IV. CONCLUSION

For the foregoing reasons, Network-1 respectfully requests that the Court preclude Dr. Bhattacharjee from offering, in any form:

(1) the opinion that the agreed construction of "sublinear" excludes changes Google's engineers make to the portion of the index Siberia searches, including Bhattacharjee Supp. Rpt., Ex. 16 at ¶ 24 (first sentence), ¶ 26 & n.28, and ¶ 32 (from "The notion that humans");

(2) the opinion that Google could have relocated the Match System outside the United States, including Bhattacharjee Rpt., Ex. 22 at § XVI, ¶¶ 453–79 & nn.423–61, and Bhattacharjee Supp. Rpt., Ex. 16 at § VIII, ¶¶ 33–52 & nn.44–97, and ¶ 53 (second sentence), together with Defendant exhibits Q, R, T, U, V, W, AE, and AF–AL to the extent offered through him; and

(3) the opinion that uploading a video is a step of the claimed method that Google must perform or that Google does not direct or control its users' uploads, including Bhattacharjee Rpt., Ex. 22 at § XI, ¶¶ 312–13 & n.266.

The relief extends to testimony, demonstratives, and argument offering the same substance.

Dated: November 6, 2026

*/s/ Brian D. Ledahl*
Marc A. Fenster (*pro hac vice*)
Reza Mirzaie (*pro hac vice*)
Brian D. Ledahl (*pro hac vice*)
Benjamin T. Wang (*pro hac vice*)
Dale Chang (*pro hac vice*)
Adam S. Hoffman (*pro hac vice*)
Paul A. Kroeger (*pro hac vice*)
Jacob R. Buczko (*pro hac vice*)
Sarah Wang (*pro hac vice*)
Alexandra F. Easley (*pro hac vice*)
Minna Y. Jay (*pro hac vice*)
Jason Wietholter (*pro hac vice*)
Mackenzie Paladino (NY SBN 6039366)
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991
mfenster@raklaw.com
rmirzaie@raklaw.com
bledahl@raklaw.com
bwang@raklaw.com
dchang@raklaw.com
ahoffman@raklaw.com
pkroeger@raklaw.com
jbuczko@raklaw.com
swang@raklaw.com
aeasley@raklaw.com
mjay@raklaw.com
jwietholter@raklaw.com
mpaladino@raklaw.com

Charles R. Macedo
AMSTER, ROTHSTEIN & EBENSTEIN LLP
405 Lexington Avenue
New York, NY 10174
Telephone: (212) 336-8000
Facsimile: (212) 336-8001
cmacedo@arelaw.com

*Attorneys for Network-1 Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026, a true and correct copy of the foregoing documents were served on all parties of record via electronic mail.

*/s/ Brian D. Ledahl*

Brian D. Ledahl