UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NETWORK-1 TECHNOLOGIES, INC.,

Plaintiff,

-against-

GOOGLE LLC and YOUTUBE, LLC,

Defendants.

**MEMORANDUM**
**OPINION & ORDER**

14 Civ. 2396 (PGG)
14 Civ. 9558 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Network-1 Technologies, Inc. alleges that Defendants Google LLC and YouTube LLC have infringed three of Plaintiff's patents in connection with Defendants' "Content ID system and its implementation . . . [on] the YouTube [web]site." (Cmplt. (Dkt. No. 2) ¶¶ 28, 34; 14 Civ. 9558 Cmplt. (Dkt. No. 1) ¶ 28; see also Apr. 24, 2024 Sum. J. Opin. (Dkt. No. 303) at 1)[1] The patents that are the subject of Plaintiff's Complaint are: United States Patent No. 8,010,988 (the "'988 Patent"); U.S. Patent No. 8,205,237 (the "'237 Patent"); and U.S. Patent No. 8,904,464 (the "'464 Patent").

In an April 24, 2024 decision, this Court granted Defendants summary judgment on Plaintiff's claims, finding that the '988 Patent and the '464 Patent are invalid as indefinite, and that Plaintiff had not offered evidence sufficient to create a material issue of fact as to infringement of the '237 Patent. (Network-1 Techs., Inc. v. Google LLC, No. 14 Civ. 2396 (PGG), 2024 WL 1814296, at *1, *20, *38 (S.D.N.Y. Apr. 24, 2024), appeal withdrawn, No. 24-1422, 2024 WL 3927093 (2d Cir. May 28, 2024), and aff'd in part, rev'd in part and remanded, No. 2024-1893, 2026 WL 1098461 (Fed. Cir. Apr. 23, 2026). This Court also denied Plaintiff's cross-motion for summary judgment, and denied as moot Plaintiff's appeal of Magistrate Judge

[1] Unless otherwise noted, all docket citations refer to 14 Civ. 2396.

Sarah Netburn's October 14, 2022 order striking portions of Plaintiff's Supplemental Expert Report. (Id. at *38 and n.23)

Plaintiff appealed, and in an April 23, 2026 decision, the U.S. Court of Appeals for the Federal Circuit affirmed this Court's determinations as to the '988 Patent, the '464 Patent, and the '237 Patent, to the extent that this Court found noninfringement of the '237 Patent as to the LSH version of Defendant's Content ID system. The Federal Circuit reversed as to this Court's finding of noninfringement of the '237 Patent with respect to the Siberia version of Defendants' Content ID system, however, concluding – as to this claim – that the record contains evidence demonstrating "genuine issues of material fact." Network-1 Techs., Inc. v. Google LLC, No. 2024-1893, 2026 WL 1098461, at*7 (Fed. Cir. Apr. 23, 2026) (summary order).

Trial on Plaintiff's remaining claim is scheduled for December 8, 2026. (Oct. 26, 2026 Order (Dkt. No. 376))

Given the Federal Circuit's decision, this Court must now address Network-1's objections to Magistrate Judge Netburn's order striking portions of Network-1's supplemental expert report. (Dkt. No. 285) For the reasons stated below, Network-1's objections will be overruled, and Judge Netburn's order striking portions of Plaintiff's supplemental expert report will be affirmed.

## BACKGROUND

## I. FACTS

### A. The Network-1 Patents at Issue and Defendants' Offshoring Alternative

Network-1 accuses two versions of Defendants' "Content ID" system – LSH and Siberia – of infringing its patents. (Apr. 24, 2024 Sum. J. Opin. (Dkt. No. 303) at 7-15) The Content ID system identifies uploaded media by extracting features from it, matching those features against reference media, and taking action based on the identification. Network-1

claims that those functions infringe the "fingerprinting," "matching," and "claiming" components of the asserted patents. (Pltf. Objs. (Dkt. No. 285) at 2-3)

The instant dispute regarding portions of Plaintiff's supplemental expert report concerns Defendants' proposed non-infringing alternative, which involves "offshoring" the matching component of Defendants' Content ID system. (Sept. 7, 2022 Jt. Ltr. (Dkt. No. 268)) During fact discovery, Defendants described the non-infringing alternative as "geographically locating the servers running the Accused Instrumentalities, or a portion of the Accused Instrumentalities, outside the United States." (Id., Ex. E (Dkt. No. 268-5) at 4) Network-1's technical expert, Dr. Michael Mitzenmacher, addressed Defendant's proposed non-infringing alternative in his initial expert report. (Mitzenmacher Dec. 20, 2019 Expert Rpt. (Dkt. No. 226-6) at ¶ 505) And Defendants' experts then responded to Dr. Mitzenmacher's analysis with respect to the matching component of the Content ID system. (See Bhattacharjee Feb. 14, 2020 Expert Rpt. (Dkt. No. 268-2) at 14-15) ("Thus, increasing distance-based latency of the Content ID system by relocating the US-based instances of the Match System would have no perceptible effect on these other use cases, just as it would have no perceptible effect on the partner-copyright use case that is the focus of Dr. Mitzenmacher's analysis."); see also Leonard Feb. 14, 2020 Expert Rebuttal Rpt. (Dkt. No. 268-3) at 8 ("[A]t the time of the hypothetical negotiation, Google would have been able to credibly threaten to walk away from the bargaining table: if Dr. Cox or Network-1 demanded a royalty that exceeded the cost of moving the Match System outside of the U.S., Google could have turned to this non-infringing alternative, thereby avoiding infringement.")

On February 19, 2021, after fact and expert discovery had closed and summary judgment briefing had been completed, Defendants served a supplemental interrogatory response

concerning their proposed non-infringing offshoring alternative. Defendants later produced more than 1,500 pages of documents concerning this alleged non-infringing alternative. (Sept. 7, 2022 Jt. Ltr., Ex. F (Dkt. No. 268-6) at 2-5; Pltf. Apr. 7, 2021 Ltr. (Dkt. No. 248) at 1) Defendants' February 2021 supplemental interrogatory response provides additional information concerning a proposed non-infringing alternative in which Defendants would move the "matching" or "Match System" component of their Content ID system to servers outside the United States, including in Europe.[2] (Id. at 2-5) Defendants contend that the move to the offshoring alternative limits "any damages potentially available to Network-1[,] . . . because the claims would not be infringed if the computer servers running part or all of the Content ID system were located outside the U.S." (Def. Opp. (Dkt. No. 288) at 7); see also Pltf. Objs. (Dkt. No. 285) at 3; Pltf. Reply (Dkt. No. 289) at 3)

Network-1 moved to strike Defendants' supplemental interrogatory response. (Apr. 7, 2021 Jt. Ltr. (Dkt. No. 248) at 1-3) In an April 23, 2021 order, Judge Netburn denied

---

[2] In a May 14, 2015 response to Plaintiff's Interrogatory No. 13 – which asks Defendants to "identify with particularity [any] non-infringing alternatives" – Defendants stated, inter alia, that "[t]he first available non-infringing alternative is geographically locating the servers running the Accused Instrumentalities, or a portion of the Accused Instrumentalities, outside of the United States." (See Sept. 7, 2022 Jt. Ltr., Ex. E (Dkt. No. 268-5) at 4)

In their February 19, 2021 supplemental response to Interrogatory No. 13, Defendants provided additional information concerning their proposed non-infringing offshoring alternative; at that time, Defendants asserted that this "additional evidence [is] consistent with" "the prior testimony of Defendant's fact and expert witnesses" concerning the "Content ID Match System." (Sept. 7, 2022 Jt. Ltr., Ex. F (Dkt. No. 268-6) at 4) In their February 19, 2021 supplemental response, Defendants disclose that "between September 2011 and November 2020, production instances of the Content ID Match System were located in both the United States and in Europe," but "[b]eginning in November 2020, Defendants began relocating the U.S. instances of the Match System to servers outside the United States." (Id.) Defendants state that this "relocation was complete by no later than January 28, 2021," which "confirms the prior testimony of Defendant's witnesses, who explained that such a relocation would be relatively simple as a technical matter." (Id.)

Network 1's motion to strike but authorized Network-1 to conduct additional fact discovery concerning the proposed non-infringing offshoring alternative, with the precise scope of the additional discovery to be the subject of a meet-and-confer between the parties. (Apr. 23, 2021 Order (Dkt. No. 252)) The parties subsequently entered into a stipulation concerning the scope of the additional fact discovery each side would take, while reserving the right to serve supplemental expert reports related to that discovery. (Stipulation (Dkt. No. 256) at ¶¶ 1-7, 10) In a July 11, 2022 order, this Court directed that Network-1 serve any supplemental expert reports by August 26, 2022, and that Defendants serve any responsive supplemental expert reports by September 16, 2022. (July 11, 2022 Order (Dkt. No. 266) at 1)

**B. Plaintiff's Supplemental Expert Report and Judge Netburn's Order Striking Portions of that Report**

On August 26, 2022, Network-1 served a supplemental expert report from Dr. Mitzenmacher addressing, inter alia, whether Defendants' offshoring alternative – as described in greater detail in Defendants' February 2021 supplemental interrogatory response and in the accompanying additional discovery – is a viable non-infringing alternative. (Sept. 7, 2022 Jt. Ltr., Ex. A (Dkt. No. 268-1) (Mitzenmacher Supp. Expert Rpt.) ¶¶ 27-146) In his supplemental report, Dr. Mitzenmacher states that Defendants' operation of the matching component outside the United States would infringe Plaintiff's U.S. Patent No. 9,538,216 (the "'216 Patent"), a Network-1 system patent that is not asserted in the instant actions. (Id. ¶¶ 38-147) While disclaiming any effort to assert the '216 Patent or "seek[] damages for infringement of this patent in the presently pending cases" (Pltf. Objs. (Dkt. No. 285) at 4), Network-1 proffers Dr. Mitzenmacher's infringement analysis of the '216 Patent to explain why Defendants' proposed alternative would not be non-infringing. (Id. at 1, 5) In short, Network-1's analysis of the '216 Patent is designed to demonstrate that Defendants' proposed non-infringing alternative is not

viable because it would infringe another Network-1 patent. (See id. at 4; Pltf. Reply (Dkt. No. 289) at 3)

On September 7, 2022 – before Defendants' responsive supplemental expert reports were due – Defendants moved to strike paragraphs 38-147 of Dr. Mitzenmacher's supplemental expert report. (Sept. 7, 2022 Jt. Ltr. (Dkt. No. 268) at 1-3) Defendants argue that Dr. Mitzenmacher's '216 Patent analysis could and should have been included in his December 20, 2019 expert report, and is not based on the supplemental discovery authorized by Judge Netburn in her April 23, 2021 order. (Id. at 2-3) Network-1 responds that it was only after it received the additional discovery resulting from Judge Netburn's April 23, 2021 order that it had sufficient detail to analyze the particular offshoring configuration Defendants proposed. (Id. at 4-5)

On October 6, 2022, Judge Netburn conducted a hearing concerning Defendants' motion to strike (October 6, 2022 Minute Entry), and in an October 14, 2022 order she granted Defendants' motion to strike those portions of Dr. Mitzenmacher's supplemental expert report containing his analysis of Plaintiff's '216 Patent. (Oct. 14, 2022 Order (Dkt. No. 283)) Judge Netburn concludes that Network-1's failure to "affirmatively identify" the '216 Patent – "especially during the supplemental discovery period" – violated its obligations under Rule 26(a)(1), and that Defendants "relied on Plaintiff's silence" and would be "unduly prejudiced" if required to challenge the '216 Patent without additional discovery. (Id.) Accordingly, Judge Netburn granted Defendants' motion to strike paragraphs 38-147 of Dr. Mitzenmacher's supplemental expert report. (Id.)

## II. PLAINTIFF'S OBJECTIONS

On October 28, 2022, Network-1 filed objections to Judge Netburn's order granting Defendants' motion to strike portions of Dr. Mitzenmacher's supplemental expert report. (Pltf. Objs. (Dkt. No. 285)

In its objections, Network-1 first argues that Judge Netburn's decision rests on an incorrect factual premise – namely, that Network-1 did not identify the '216 Patent during discovery. (Pltf. Objs. (Dkt. No. 285) at 7-9) In support of this argument, Network-1 cites (1) "a Network-1 Form 10-K that lists the '216 patent as part of the 'Cox Patent Portfolio,' the same portfolio as the three asserted patents"; and (2) "a license agreement which designates a certain set of patents as 'Network-1 Patents,' with that set listed on Exhibit B-2 and including both the application that matured into the '216 patent (14/981,219) as well as the three asserted patents." (Id. at 10-11) Network-1 further argues that Judge Netburn's finding of undue prejudice rests on the "same false factual predicate" and that, in any event, Defendants have had an adequate opportunity to respond to the analysis of the '216 Patent set forth in Dr. Mitzenmacher's supplemental expert report. (Id. at 9-10)

In response to Defendants' argument that Dr. Mitzenmacher should have presented his '216 Patent analysis in his original December 20, 2019 expert report, Network-1 argues that this was not possible, because Dr. Mitzenmacher's '216 Patent analysis relies on information obtained during the supplemental discovery authorized in Judge Netburn's April 23, 2021 order. (Id. at 10-14)

Finally, Network-1 complains that Judge Netburn "clearly erred by issuing a single-paragraph ruling on abbreviated letter briefing in which Network-1 was limited to approximately 2 ½ pages of a letter to set out its entire position." (Id. at 14) Network-1 contends that the complexity of the dispute concerning Dr. Mitzenmacher's supplemental report

"warrant[s] more fulsome briefing," and "suggest[s] that Google's objections are better suited to a motion *in limine* where this issue can be properly fleshed out for the Court." (Id. at 18)

In arguing that Plaintiff's objections should be overruled, Defendants contend – as to Network-1's disclosure of the '216 Patent argument – that Plaintiff's references to its SEC filing and the license agreement "do not undermine Judge Netburn's conclusion," because "the availability of two documents that merely reference the '216 patent" does not demonstrate that Plaintiff met its disclosure obligations under the Federal Rules, including the requirement to "disclos[e] . . . 'the documents or other evidentiary material . . . on which each computation [of damages claimed] is based." (Def. Opp. (Dkt. No. 288) at 11-12 (citing Fed. R. Civ. P. 26(a)(1)(A)(iii)) (second alteration in Def. Opp.)).

As to Plaintiff's argument that Dr. Mitzenmacher could not have conducted his '216 Patent analysis until the supplemental discovery had been produced after April 2021, Defendants assert that Dr. Mitzenmacher's analysis of the '216 Patent "does not depend on which portion or portions of the Content ID operate outside the US."[3] (Id. at 18) According to Defendants, "[i]n opining on the non-infringing alternative, Dr. Mitzenmacher relied on Rule 30(b)(6) testimony from 2019 regarding the steps Google could take to relocate the Match System, i.e., the core component of Content ID that Google in fact relocated in January 2021." (Id. at 19) (noting that "[a]s part of his analysis [in 2019], Dr. Mitzenmacher expressly stated that Google's Rule 30(b)(6) witness 'was only referring to the matching, not the fingerprinting or

---

[3] In this regard, Defendants point out that Dr. Mitzenmacher's supplemental report "asserts that 'Defendants exercise control of the system in the United States and obtain beneficial use of the system in the United States' because, among other things, . . . 'beneficial use is not based on the physical location of the matching servers, but rather the location of the video upload.'" (Defs. Opp. (Dkt. No. 288) at 18 (quoting Mitzenmacher Aug. 25, 2022 Supp. Expert Rpt. (Dkt. No. 268-1) at ¶¶ 39, 41))

claiming portions of the system.'" (quoting Mitzenmacher Dec. 20, 2019 Expert Rpt. (Dkt. No. 226-6) at ¶ 505(b) (emphasis in Def. Opp.)) Accordingly, Dr. Mitzenmacher's original expert report – issued in December 2019 – demonstrates that he understood at that time that the proposed non-infringing alternative involved relocating the matching component overseas, rather than relocating the fingerprinting or claiming components. (Id.)

Finally, Defendants assert that their February 2020 expert reports addressed "the technical and financial aspects of the non-infringing alternative" in detail. In this regard, Defendants cite Dr. Leonard's rebuttal expert report (Dkt. No. 268-3), which analyzes the effect of "moving the Match System outside of the U.S." for purposes of "avoiding infringement" and "negotiating" damages. (Id. at 8) Plaintiff was thus well aware of Defendants' argument that moving the matching system outside the United States would avoid infringement of the asserted patents and therefore serve as a viable non-infringing alternative. Aware of Defendants' argument, Network-1 did not seek "leave to [respond and to present its '216 Patent infringement analysis], even though the Scheduling Order authorized it to do so." (Def. Opp. (Dkt. No. 288) at 19-20)

## DISCUSSION

## I. LEGAL STANDARDS

### A. Review of a Magistrate Judge's Order Concerning a Non-Dispositive Matter

Under Rule 72 of the Federal Rules of Civil Procedure, "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide," the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' if the reviewing court is left with the definite and firm conviction that a mistake has

been committed." R.F.M.A.S., Inc. v. So, 748 F. Supp. 2d 244, 248 (S.D.N.Y. 2010) (citation omitted). "[A] finding is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Id. "This is a highly deferential standard, and the objector thus carries a heavy burden." Khaldei v. Kaspiev, 961 F. Supp. 2d 572, 575 (S.D.N.Y. 2013). "A magistrate judge possesses wide discretion in handling discovery disputes." Misas v. N.-Shore Long Island Jewish Health Sys., No. 14-CV-8787 (ALC) (DJF), 2016 WL 4082718, at *3 (S.D.N.Y. July 25, 2016); see also, e.g., U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc., No. 04 Civ. 6189 (JFK), 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007) ("A magistrate judge is best qualified to judge the entire atmosphere of the discovery process . . . . Therefore, [her] rulings on discovery matters are entitled to substantial deference." (internal quotation marks omitted))

### B. Preclusion of Evidence

Fed. R. Civ. P. 26(a)(2)(D) governs the "[t]ime to [d]isclose [e]xpert [t]estimony," and provides that "[a] party must make these disclosures at the times and in the sequence that the court orders." "A party that fails either to obey a court order concerning discovery or to comply with its Rule 26(a) disclosure obligations may be sanctioned under Rule 37." Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp., No. 14-CV-48 (AJN) (HBP), 2016 WL 184407, at *2 (S.D.N.Y. Jan. 15, 2016).

Fed. R. Civ. P. 37(c)(1) provides that, "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Because preclusion is a "'harsh remedy,'" however, it "'should be imposed only in rare situations.'" Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC,

280 F.R.D. 147, 156 (S.D.N.Y. 2012) (quoting Izzo v. ING Life Ins. & Annuity Co., 235 F.R.D. 177, 186 (E.D.N.Y. 2005)). "In determining whether preclusion or another sanction would be appropriate, courts should consider: '(1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the importance of . . . the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" Id. at 157 (quoting Softel, Inc. v. Dragon Med. & Sci. Commc'ns., Inc., 118 F.3d 955, 961 (2d Cir. 1997)).

"In addition to or instead of [the] sanction [of preclusion], the court, on motion and after giving an opportunity to be heard . . . [,] may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C). These sanctions may include "prohibiting the disobedient party from . . . introducing designated matters in evidence." Fed. R. Civ. P. 37(c)(1)(C).

## II. ANALYSIS

### A. Whether Network-1's Disclosure Regarding the '216 Patent Was Adequate

In objecting to Judge Netburn's order granting Defendants' motion to strike, Network-1's primary argument is that Judge Netburn's decision is premised on a "false factual predicate" – that being Network-1's failure to affirmatively identify the '216 Patent. (Pltf. Objs. (Dkt. No. 285) at 10-12) According to Network-1, "the '216 patent was identified during the initial fact discovery period and Google was well aware of it." (Id. at 10) In this regard, Plaintiff points to "initial disclosures identifying related patents and their file histories as categories of documents on which Network-1 may rely." (Pltf. Reply (Dkt. No. 289) at 5) And in arguing that Defendants were aware of the '216 Patent, Plaintiff point out that (1) "Google's own damages expert Mr. Leonard produced and cited to a Network-1 Form 10-K that lists the '216 patent as part of the 'Cox Patent Portfolio,' the same portfolio as the three asserted patents"; (2)

"Network-1 produced a license agreement" that included the patent "application that matured into the '216 patent" (Pltf. Objs. (Dkt. No. 285) at 10-11); and (3) "the '216 patent is indisputably publicly available." (Pltf. Reply (Dkt. No. 289) at 5)

Accepting Plaintiff's argument that these materials would have made Defendants aware of the existence of the '216 Patent, Plaintiff has not shown that Defendants had notice that Network-1 intended to argue that the '216 Patent rendered Defendants' proposed non-infringing alternative non-viable. Identification of a patent as part of a patent portfolio or as the subject of a license agreement does not alone suffice to disclose that that patent renders a particular non-infringing alternative non-viable.

MLC Intellectual Property, LLC v. Micron Technology, Inc., 10 F.4th 1358 (Fed. Cir. 2021), is instructive on this point. In MLC, plaintiff sought to introduce – after fact discovery had closed – expert testimony that two license agreements reflected a 0.25% royalty rate, which supported plaintiff's "reasonable royalty" calculation. Id. at 1364. The district court excluded portions of that testimony "as a result of MLC's failure to supplement its discovery responses to provide this information . . . until after close of fact discovery." Id. at 1370-71. The district court reasoned that, "absent a disclosure by MLC, Micron would have no way of knowing that [plaintiff's expert] would opine that the agreements reflect a 0.25% royalty rate, particularly given the Rule 30(b)(6) testimony indicating that MLC did not know the royalty rate in the Hynix and Toshiba agreements." Id. at 1370.

"On appeal, MLC primarily argue[d] that it was not required to disclose these specific facts and documents supporting its damages theory during fact discovery because it ultimately disclosed them during expert discovery." Id. at 1369. In affirming the district court's exclusion order, the Federal Circuit rejected that argument, finding that the mere identification of

the licensing agreements was not adequate absent disclosure of the significance that plaintiff's expert would attribute to the licensing agreements – i.e., that they reflected a royalty rate of 0.25%. Id. at 1370-71 (ruling that "[t]he district court acted well within its discretion when it excluded [plaintiff's expert's] opinion that the Hynix and Toshiba licenses reflect a 0.25% rate," even though plaintiff had "identif[ied] the Toshiba and Hynix licenses"; merely identifying the licenses left defendant with "no way of knowing that [plaintiff's expert] would opine that the agreements reflect a 0.25% royalty rate").

The Federal Circuit also rejected plaintiff's argument that disclosure could await expert discovery. According to the Federal Circuit, Rule 26(a)(2)'s expert disclosure requirements supplement, rather than displace, Rule 26(a)(1)'s requirements concerning damages computations and supporting evidence. Id. at 1371 ("Rule 26 explains that the disclosures required under section (a)(2) are in addition to the disclosures required by Rule 26(a)(1).") (emphasis in original) (internal quotation marks omitted). In so ruling, the Federal Circuit noted that, "had [plaintiff] disclosed this information, [defendant] could have sought fact discovery regarding this contention." Id. at 1370-71.

The reasoning of the MLC court applies with equal force here. Network-1 maintains that it invoked the '216 Patent merely to demonstrate that "Google's proposed alternative . . . is not a viable non-infringing alternative to products that infringe the asserted patents." (Pltf. Objs (Dkt. No. 285) at 4) But those circumstances do not excuse compliance with the disclosure obligations set forth in the Federal Rules. MLC, 10 F.4th at 1370-71. Accepting Network-1's representations that it identified the '216 Patent in its initial disclosures; that the patent is referenced in an SEC filing; and that the '216 Patent is the subject of a licensing agreement that was produced in discovery, these disclosures did not – as explained below – alert

Defendants to the assertion later made by Dr. Mitzenmacher in his supplemental expert report that the '216 Patent renders Defendants' proposed offshoring alternative non-viable. As in MLC, disclosure of the underlying document did not provide notice of the infringement argument Plaintiff intended to make, nor permit Defendants a meaningful opportunity to investigate the infringement argument before fact discovery closed. MLC, 10 F.4th at 1370-71.

And MLC also demonstrates that a party cannot defer an otherwise required disclosure merely because the undisclosed contention will ultimately be presented through a damages-related expert analysis. Id. at 1371.

Here, the '216 Patent is referenced in (1) "a Network-1 Form 10-K listing the patent as part of the 'Cox Patent Portfolio'"[4]; and (2) "a license agreement [produced during discovery] which designates a certain set of patents as 'Network-1 Patents,' . . . including . . . the application that matured into the '216." (Pltf. Objs. (Dkt. No. 285) at 10-11) While these documents reference the '216 Patent, they do not indicate that the '216 Patent would render Defendants' offshoring alternative not viable. (See Pltf. Objs., Ex. A (Dkt. No. 285-2) (Network-1 2016 Form 10-K) at 9; see also Leonard Feb. 14, 2020 Expert Rebuttal Rpt. (Dkt. No. 285-4) ¶100 (citing Settlement and License Agreement, July 8, 2016, § 1.2 (NETWORK1_014113)) Indeed, Plaintiff acknowledges that it "did not disclose its contentions rebutting Google's . . . 'offshoring' alternative during the supplemental fact discovery period."[5] (See Pltf. Objs. (Dkt. No. 285) at 11)

---

[4] Network-1 admits that it was "Google's own damages expert Mr. Leonard" who "produced and cited to the Network-1 Form 10-K [referencing the '216 Patent]." (Pltf. Objs. (Dkt. No. 285) at 10)

[5] Plaintiff argues that it had no obligation to disclose its '216 Patent argument because "Google did not propound any interrogatories (or any other discovery) seeking disclosure of Network-1 rebuttal contentions concerning non-infringing alternatives, either in the initial or the

As for the fact that "a Network-1 Form 10-K . . . lists the '216 patent as part of the 'Cox Patent Portfolio'" (see Pltf. Objs. (Dkt. No. 285) at 10), the mere disclosure of the '216 Patent in a 10-K filing did not give Defendants notice that they would need to investigate the validity and scope of the '216 Patent in order to prepare to meet an infringement analysis premised on that patent. "Multiple district courts . . . have held that general knowledge of a patent portfolio without more is insufficient even to plausibly allege knowledge of a particular asserted patent." Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc., 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021) (cleaned up); Google LLC v. Sonos, Inc., No. C 20-06754 WHA, 2022 WL 195850, at *2 (N.D. Cal. Jan. 21, 2022) ("Generally, knowledge of a patent family or patent portfolio does not equate to knowledge of a specific patent."); Plexxikon Inc. v. Novartis Pharms. Corp., No. 17-CV-04405-HSG, 2021 WL 2808971, at *2 (N.D. Cal. July 6, 2021)

---

supplemental discovery periods. And there is no requirement under Rule 26(a)(1) or any other operative rule that Network-1 do so absent a discovery request seeking that information." (See Pltf. Objs. (Dkt. No. 285) at 11-12) The problem with this argument is that Defendants had no motive to seek discovery concerning the '216 Patent because Plaintiff – while arguing that the offshoring alternative was not viable – did so on grounds other than the '216 Patent.

In his original, 2019 expert report Dr. Mitzenmacher asserts that Defendants' offshoring alternative should be rejected because (1) "there are significant outstanding questions (both technical and cost related) concerning whether or not locating the servers (or a portion of the servers) running the Content ID Accused Instrumentalities outside the United States is a viable alternative"; and (2) "Defendants have not addressed how locating the servers (or a portion of the servers) running the Content ID Accused Instrumentalities outside the United States would impact [deduplicating search results for video searches, identifying and removing unsafe content from YouTube, providing links for users to make purchases or view other promoted content,] and other products and services that rely on Content ID's content identification technology." (Mitzenmacher Dec. 20, 2019 Expert Rpt. (Dkt. No. 226-6) at ¶ 505(f)-(g)) While raising these practical concerns regarding Defendants' proposed offshoring alternative, Dr. Mitzenmacher does not suggest that the offshoring alternative is not viable because it would infringe the '216 Patent. (Id.)

It would have been reasonable for Defendants to assume that Plaintiff's grounds for challenging the offshoring alternative were those set forth by Plaintiff's expert in his original expert report, and those reasons do not include infringement of the '216 Patent.

("[m]ere awareness of a patent portfolio is not sufficient to show knowledge of a specific patent"); BillJCo, LLC v. Apple Inc., 583 F. Supp. 3d 769, 776 (W.D. Tex. 2022) (rejecting argument "that notice of one patent in a portfolio or large family constitutes constructive notice of every patent in that portfolio or family").

Similarly, the fact that the existence of the '216 Patent is "publicly available" information did not give Defendants notice that they would need to investigate the validity and scope of that patent. See Uniloc USA, Inc. v. Samsung Elecs. Am., Inc., No. 2:17-CV-00651-JRG, 2019 WL 2267212, at *8 (E.D. Tex. May 28, 2019) ("general[] aware[ness] of the *existence*" of certain documents "does not excuse" a party's "right under Rule 26 to be given fair notice of [the opposing party's] specific *reliance* on those documents" (emphasis in Uniloc)) (citing Martino v. Kiewit New Mexico Corp., 600 F. App'x 908, 911 (5th Cir. 2015) ("[E]ven if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses."))

The conclusion that Defendants' mere awareness of the '216 Patent does not constitute notice of Plaintiff's '216 Patent infringement argument is a fortiori true here given that (1) the '216 patent was not asserted in these actions; and (2) Network-1's original expert report – while challenging Defendants' proposed non-infringing offshoring alternative – did not do so on the basis of the '216 Patent.

In sum, Judge Netburn correctly concludes that the references to the '216 Patent on which Network-1 relies did not provide meaningful notice to Defendants of the use Network-1 intended to make of the '216 Patent.

Moreover, at the October 6, 2022 hearing concerning Defendants' motion to strike portions of Dr. Mitzenmacher's supplemental expert report, Judge Netburn finds that,

"during [the supplemental] discovery period," Network-1 did not disclose "that [its] expert would be relying on [the '216 Patent]" to argue that the proposed non-infringing alternative was not viable. (Oct. 6, 2022 Tr. (Dkt. No. 285-3) at 10-11). She further observes that, had Network-1 disclosed during the supplemental discovery period that it intended to argue that the proposed offshoring alternative infringed the '216 Patent, "presumably Google would have conducted discovery at that time [concerning that issue]." (Id. at 11). Judge Netburn goes on to fault Network-1 for its failure to "affirmatively identify" the '216 Patent, "especially during the supplemental discovery period," and finds that "Defendants relied on Plaintiff's silence." (Oct. 14, 2022 Order (Dkt. No. 283)). In sum, Judge Netburn concludes that Network-1 failed to timely identify the '216 Patent as a basis for its challenge to Defendants' proposed non-infringing offshoring alternative while Defendants still had an opportunity to conduct discovery regarding that issue.

This Court finds no error in Judge Netburn's determination that Network-1 did not timely disclose that it intended to rely on the '216 Patent as a basis for its challenge to Defendants' proposed non-infringing offshoring alternative. Network-1's showing that the '216 Patent was incidentally mentioned in an SEC filing, and was the subject of a license agreement, does not begin to demonstrate that Network-1 (1) met its disclosure obligations regarding its '216 Patent argument; or (2) has satisfied its "heavy burden" in seeking to overturn Judge Netburn's non-dispositive ruling. Khaldei, 961 F. Supp. 2d at 575.

As noted above, however, Network-1 asserts that its '216 Patent analysis could not have been addressed in Dr. Mitzenmacher's original expert report, because Defendants had not produced the discovery necessary to present that argument. Network-1 maintains that Defendants' original description of the proposed non-infringing offshoring alternative was too

general to permit the analysis that Dr. Mitzenmacher later performed in his supplemental expert report. (See Pltf. Reply (Dkt No. 289) at 8-9) ("Without knowing what portion was offshored and how the entire modified system would function, it was not possible for Dr. Mitzenmacher to make these fact-specific determinations in his 2019 report.") According to Network-1, it was not until Defendants explained in their supplemental disclosures that the "matching" component of Defendants' Content ID system would be relocated offshore – while the other components of the Content ID system would remain in the United States – that Dr. Mitzenmacher had the information necessary to perform his '216 Patent analysis. (Pltf. Objs. (Dkt. No. 285) at 16-17).

As an initial matter, however, Defendant disclosed as early as May 14, 2015, in a supplementary response to Plaintiff's Interrogatory No. 13 – which asked Defendants to "identify with particularity [any] non-infringing alternatives" – that "[t]he first available non-infringing alternative is geographically locating the servers running the Accused Instrumentalities, or a portion of the Accused Instrumentalities, outside of the United States." (See Sept. 7, 2022 Jt. Ltr., Ex. E (Dkt. No. 268-5) at 4) Accordingly, Plaintiff was on notice eleven years ago that Defendants were proposing a non-infringing offshore alternative involving one or more components of the Content ID system. To the extent that the '216 Patent makes non-viable a non-infringing offshore alternative involving one or more components of the Content ID system, Plaintiff would have been aware of that argument as of May 2015.

And even assuming arguendo that Defendants' 2015 disclosure was not adequate to trigger Plaintiff's '216 Patent argument, Network-1 has not explained why it failed to identify its '216 Patent argument earlier than August 26, 2022.

As discussed above, in opining in his original 2019 expert report that Defendants' proposed non-infringing offshoring alternative was not viable, Dr. Mitzenmacher relied on

testimony from Defendants' Rule 30(b)(6) witness concerning relocation of the "Match System" outside of the United States. (See Mitzenmacher Dec. 20, 2019 Expert Rpt. (Dkt. No. 226-6) at ¶ 505) Accordingly, Plaintiff's delay in disclosing its '216 Patent infringement argument cannot be attributed to a lack of knowledge that the component of the Content ID system that would be relocated overseas would be the matching component.

And after receiving the additional discovery concerning this issue during the supplemental discovery period authorized by Judge Netburn's April 23, 2021 order (Dkt. No. 252), Plaintiff still did not disclose its '216 Patent infringement argument.

Supplemental discovery took place between issuance of the April 23, 2021 order and November 2021, when the final deposition was taken. (See Def. Opp. (Dkt. No. 288) at 9; see also Stipulation (Dkt. No. 256) at ¶¶ 9-10)) During that time, Network-1 received the discovery it contends was necessary in order to permit Dr. Mitzenmacher to prepare his supplemental expert report. (Pltf. Objs. (Dkt. No. 285) at 15-17) But Network-1 did not disclose its '216 Patent infringement analysis until August 26, 2022 (see Oct. 6, 2022 Tr. (Dkt. No. 285-3) at 21), and has offered no explanation for its delay. As discussed below, Network-1's failure to disclose its '216 Patent argument prevented Defendants from conducting discovery relevant to that argument during the supplemental discovery period. (See Oct. 14, 2022 Order (Dkt. No. 283); Oct. 6, 2022 Tr. (Dkt. No. 285-3) at 9-10) ("[H]ad you said to [Defendants] during that discovery period we think that [the offshoring] alternative actually infringes the '216 patent, presumably [Defendants] would have conducted discovery at that time.")) See Am. Stock Exch., LLC v. Mopex, Inc., 215 F.R.D. 87, 94 (S.D.N.Y. 2002) (precluding evidence of newly asserted patent claim because, inter alia, "[i]f the AMEX had learned of Mopex's patent claim 34 theory

in a timely manner, it presumably would have pursued fact discovery unique to patent claim 34.")

**B. Whether Defendants Are Unfairly Prejudiced by Network-1's Untimely Disclosure**

Judge Netburn concludes that Network-1's failure to disclose its '216 Patent argument and analysis has caused Defendants to suffer unfair prejudice. (Oct. 14, 2022 Order (Dkt. No. 283); Oct. 6, 2022 Tr. (Dkt. No. 285-3) at 10-11)

Defendants complain that – as a result of the delayed disclosure – they did not have an opportunity to obtain discovery from Network-1 and the inventor concerning the '216 Patent's "validity or scope." (Def. Opp. (Dkt. No. 288) at 15-17; see also TNI Packaging, Inc. v. Perdue Farms, Inc., No. 05 C 2900, 2006 WL 6654885 (N.D. Ill. Feb. 28, 2006) ("An attorney cannot evaluate patentability . . . without knowing or obtaining relevant information from the inventor.") (citing In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 806 (Fed. Cir. 2000)). Relevant, non-public information concerning the '216 Patent would have included "lab notebooks, emails, claim charts, drafts of the claims," and materials concerning prior art not submitted to the U.S. Patent & Trademark Office. (Def. Opp. (Dkt. No. 288) at 15)

As a result of the delayed disclosure, Defendants were likewise deprived of an opportunity to investigate invalidity, including through discovery from third parties that might have developed relevant prior-art systems. (Id. at 15-16) At the hearing before Judge Netburn, Defendants explained that their response to Dr. Mitzenmacher's supplemental expert report did not include the invalidity investigation they would have otherwise undertaken had timely disclosure been made. (Oct. 6, 2022 Tr. (Dkt. No. 285-3) at 32-34); see also Mopex, Inc., 215 F.R.D. at 94.

Defendants likewise did not have an opportunity to properly address claim construction issues specific to the '216 Patent. Defendants contend – and Plaintiff does not dispute – that Dr. Mitzenmacher's analysis of the '216 Patent in his supplemental expert report involves claim terms that are not found in the asserted patents. Defendants' expert was thus required to respond to Dr. Mitzenmacher's supplemental report without the benefit of proposed constructions directed to those terms. (Def. Opp. (Dkt. No. 288) at 15-16). And while Network-1 contends that no further claim construction was necessary, Plaintiff has not successfully rebutted Defendants' argument that Plaintiff's introduction of the '216 Patent after fact discovery deprived Defendants of a meaningful opportunity to investigate and frame any such disputes. See Mopex, Inc., 215 F.R.D. at 94 (citing Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd., No. 95 C 0673, 1996 WL 680243, at *8 (N.D.Ill. Nov. 21, 1996) (finding that plaintiff was "prejudicially surprised" where defendants did not supplement their interrogatory responses concerning the basis for their patent defense in a timely fashion)).

Network-1 points out, however, that Defendants' expert produced a 35-page rebuttal to Dr. Mitzenmacher's supplemental report. (Pltf. Objs. (Dkt. No. 285) at 13) But the length of the rebuttal report does not undermine Defendants' arguments that – because of the late disclosure – they did not have an adequate opportunity to obtain evidence bearing on the validity of the '216 Patent, to investigate prior art, and to address the scope of the additional claim.

This Court agrees with Judge Netburn that Plaintiff did not provide timely notice that it intended to rely on the '216 Patent to defeat Defendants' proposed non-infringing alternative, and that Plaintiff's delay in making this disclosure deprived Defendants of a fair

opportunity to investigate and respond to this argument. Network-1 has not shown either a basis for disturbing Judge Netburn's findings or an error of law requiring that the order be set aside.[6]

## C. Whether Preclusion is an Appropriate Remedy

In deciding whether to exclude testimony because of a disclosure violation, a court should consider "'(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006) (quoting Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir.1997).

---

[6] Network-1 complains about the brevity of Judge Netburn's October 14, 2022 order striking portions of Dr. Mitzenmacher's supplemental report, and suggests that letter briefing supplemented by oral argument at a hearing did not give Network-1 an adequate opportunity to present its arguments. (Pltf. Objs. (Dkt. No. 285) at 17-18) These arguments are not persuasive. While Fed. R. Civ. P. 72(a) requires a magistrate judge, "when appropriate," to issue "a written order stating the decision," see Fed. R. Civ. P. 72(a), the rule does not prescribe any particular length of analysis. Here, Judge Netburn identified Network-1's disclosure obligation, its failure to disclose its intent to rely on the '216 Patent to defeat Defendants' proposed non-infringing offshoring alternative, and the unfair prejudice Defendants suffered as a result of Network-1's failure to make timely disclosure. (See Oct. 14, 2022 Order (Dkt. No. 283)) Judge Netburn's Order thus explains the basis for her ruling sufficiently to permit meaningful review. The complexity of the underlying patent dispute does not render that explanation inadequate.

As to Network-1's contention that Judge Netburn did not give Plaintiff an adequate opportunity to present its arguments, Judge Netburn reviewed the parties' written submissions and heard oral argument concerning the disclosure issue. She asked whether Network-1 had disclosed the '216 Patent during supplemental discovery and explained her concern that Defendants had been unfairly prejudiced as a result of Network-1's failure to make timely disclosure of its '216 Patent argument. (See Oct. 6, 2022 Tr. (Dkt. No. 285-3) at 4-13, 26-27) In sum, Network-1 had an opportunity to address both the asserted disclosure obligation and the resulting prejudice to Defendants as a result of its failure to make timely disclosure.

Finally, in making its objections to Judge Netburn's decision, Network-1 has had a full and fair opportunity to lay before this Court any factual or legal arguments justifying reversal.

As to the first factor, and as discussed above, Network-1 has not proffered a reasonable explanation for its failure to timely disclose its argument that the '216 Patent renders Defendants' proposed non-infringing offshoring alternative non-viable. Although Dr. Mitzenmacher's December 20, 2019 expert report cites several reasons why the offshoring alternative is not viable (see Mitzenmacher Dec. 20, 2019 Expert Rpt. (Dkt. No. 226-6) at ¶ 505), none of those reasons is premised on the '216 Patent, which Plaintiff has owned since 2017. (Oct. 6, 2022 Tr. (Dkt. No. 285-3) at 29-30) As discussed above, the fact that the Defendants were aware of the existence of the '216 Patent does not demonstrate that they had notice of Plaintiff's intent to rely on that patent to argue that Defendants' proposed non-infringing offshoring alternative is not viable. The first factor therefore weighs in favor of preclusion.

As to the second factor – the importance of the disputed expert testimony – Plaintiff has not asserted the '216 Patent in this litigation and does not seek damages for any alleged infringement. Plaintiff instead cites the '216 Patent as one of "many reasons" why Defendants' proposed non-infringing offshoring alternative is not viable. (Pltf. Objs. (Dkt. No. 285) at 4) ("[I]nfringement of the '216 patent by Google's proposed alternative is simply one of many reasons why the alternative that was the subject of the supplemental discovery is not a viable *non-infringing* alternative to products that infringe the asserted patents.") (emphasis in original)) Although Dr. Mitzenmacher's testimony concerning the '216 Patent would provide an additional basis on which to challenge Defendants' proposed non-infringing offshoring alternative, preclusion of this evidence will not prevent Plaintiff from arguing that the proposed alternative is not viable on other disclosed grounds. Accordingly, the importance of the testimony at issue does not weigh heavily against preclusion.

As to the remaining factors – unfair prejudice to Defendants and the opportunity for a continuance – Defendants have been denied a meaningful opportunity to respond to Plaintiff's '216 Patent arguments and analysis. For all the reasons discussed above, providing Defendants with a meaningful opportunity to respond to Plaintiff's '216 Patent arguments and analysis would require this Court to reopen fact and expert discovery. Reopening discovery would impose further expense and delay in a litigation that has been pending since 2014, and is now scheduled for trial in three weeks' time. These factors therefore likewise weigh in favor of preclusion.

Having considered all the circumstances, this Court concludes that Judge Netburn did not abuse her discretion in striking the portions of Dr. Mitzenmacher's supplemental expert report concerning the '216 Patent.

## CONCLUSION

For the reasons stated above, Judge Netburn's October 14, 2022 Order is affirmed in its entirety, and Plaintiff Network-1's objections (Dkt. No. 285) are overruled.

Dated: New York, New York
November 17, 2026

SO ORDERED.

Paul G. Gardephe
United States District Judge